IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

UNITED STATES OF AMERICA )
)
v. ) CRIMINAL NO. 2:23-cr-20006
)
NEIL RAVI MEHTA )

## PLEA AGREEMENT

Pursuant to Rule 11(c)(1) of the Federal Rules of Criminal Procedure, the parties hereto acknowledge that they have entered into negotiations which have resulted in this Agreement. The agreement of the parties is as follows:

### WAIVER OF INDICTMENT AND
### PLEA OF GUILTY TO INFORMATION

1. The defendant, NEIL RAVI MEHTA ("MEHTA"), agrees to waive Indictment by a grand jury, and consents to the filing of an Information charging the defendant with one count of Possession of an Unregistered Firearm, in violation of 26 U.S.C. §§ 5841, 5861(d) and 5871, one count of Fraud and False Statements in violation of 26 U.S.C. § 7206(1), and one count of False Declaration Before a Court in violation of 18 U.S.C. § 1623. The Defendant further agrees to plead guilty to the Information. If the Court accepts this Plea Agreement, once the Court has pronounced sentence, the United States will move to dismiss the Indictment currently pending against the defendant in the United States District Court for the Western District of Arkansas in case # 2:23CR20006-01.

### CONSENT TO PROCEED BEFORE THE MAGISTRATE JUDGE

2. The Defendant acknowledges that he has been advised and understands that he has a right to have a United States District Judge presiding when he enters a guilty plea and that he

can exercise that right without concern or reservation. The Defendant and the United States hereby consent to have the proceedings required by Rule 11 of the Federal Rules of Criminal Procedure incident to the making of the plea to be conducted by the United States Magistrate Judge. If, after conducting such proceedings, the Magistrate Judge recommends that the plea(s) of guilty be accepted, a presentence investigation and report will be ordered pursuant to Federal Rule of Criminal Procedure 32. The Defendant acknowledges that his/her plea of guilty is subject to approval and acceptance by the District Judge and that sentencing will be conducted by the District Judge.

## WAIVER OF OBJECTIONS TO MAGISTRATE'S REPORT AND RECOMMENDATION

3. The parties acknowledge that pursuant to 28 U.S.C. § 636(b)(1)(B), the failure to file objections to the Report and Recommendation within fourteen (14) days bars them from objecting to the District Court's acceptance of the guilty plea as recommended by the Magistrate Judge. Having been advised of the right to object to the Report and Recommendation, the parties wish to waive that right for the purpose of expediting acceptance of the guilty pleas in this matter. Accordingly, evidenced by their signatures appearing below, the parties hereby waive the right to object to the Magistrate Judge's Report and Recommendation Concerning Plea of Guilty, and consent to acceptance of the same by the United States District Judge so that acceptance of the guilty pleas may proceed forthwith.

## AGREEMENT REGARDING FORFEITURE

4. The Defendant, NEIL RAVI MEHTA, hereby agrees to immediately withdraw any claims, either individually on behalf of Federal Armament LLC, XN Capital LLC or any other entity that he has an ownership interest in, to firearms seized during the execution of a search warrant in case number 2:23-cm-00011-MEF and that are the subject of any pending

administrative or civil forfeiture proceeding.

5. The Defendant agrees to execute any and all documents requested by the United States to facilitate or complete the forfeiture process(es). The Defendant further agrees not to contest or to assist any other person or entity in contesting the forfeiture of said firearms.

6. The Defendant agrees to take all steps as requested by the United States to pass clear title to forfeitable assets to the United States, and to testify truthfully in any judicial forfeiture proceeding. The Defendant also agrees that the forfeiture provisions of this Plea Agreement are intended to, and will, survive him.

### ADMISSION OF FACTUAL BASIS IN SUPPORT OF GUILTY PLEA

7. The Defendant has fully discussed with defense counsel the facts of this case and the elements of the crimes to which the Defendant is pleading guilty. The Defendant has committed each of the elements of the crimes to which the Defendant is pleading guilty and admits that there is a factual basis for this guilty plea. The following facts are true and undisputed:

### Count 1 – Possession of a Destructive Device

a. On January 31, 2023, federal law enforcement officers executed a search warrant on the residence of the defendant, NEIL RAVI MEHTA in Fort Smith, Arkansas which is within the Western District of Arkansas. MEHTA was present at the residence when officers announced their intent to enter the residence but fled from the residence prior to officers making entry into the residence. During the execution of the search warrant, officers discovered and seized a suspected destructive device located in the top left corner of the kitchen island inside MEHTA's residence. The suspected destructive device was submitted for examination by explosive device experts with the Bureau of Alcohol, Tobacco, Firearms and Explosives who confirmed that the suspected destructive device was a destructive device as that term is defined in Title 26, United

States Code, Section 5845(f). Records checks of the National Firearms Registration Transfer Records showed that the destructive device was not registered to MEHTA or any other individual or entity.

## Count 2 – Fraud and False Statements related to Tax Returns

b. Federal Armament LLC ("FEDARMS") was a business headquartered in Fort Smith, Arkansas which engaged in the manufacturing and selling ammunition, firearms, and other related items. On or about April 24, 2014, MEHTA registered FEDARMS with the Arkansas Secretary of State as a Domestic Limited Liability Corporation. Neither the "General Partnership" nor the "Limited Partnership" boxes were checked by MEHTA. FEDARMS has an entity registration date with the IRS in or about April 2014, with XN Capital, LLC, listed as the sole owner/member. As set up by its owner, FEDARMS had a Form 1065 (U.S. Return of Partnership Income) filing requirement with IRS. To date, FEDARMS has never filed any Forms 1065, or any other separate return, reporting any of its business activity (gross receipts/sales, expenses, etc).

c. XN Capital, LLC, has an entity registration date with the IRS in or about April 2011, with MEHTA listed as the sole owner/member. As a single-member LLC, XN Capital is considered by law (26 C.F.R. §§ 301.7701-2 and 301.7701-3) to be a "disregarded entity."

d. When determining what type of entity to create and related tax filing requirements with the IRS, the entity owner may effectively choose its classification for the entity. A domestic entity with one member that does not elect to be taxed as a corporation is considered a disregarded entity and the entity is treated as a sole proprietorship, which would be reported on the owner's Form 1040 (U.S. Individual Income Tax Return), Schedule C (Profit or Loss from Business). MEHTA reported XN Capital LLC on his Form 1040, Schedule C, as a sole proprietorship.

e. MEHTA was required to report his gross income and to pay all of the resultant income taxes. Because MEHTA was the sole owner of XN Capital, and XN Capital was the sole owner of FEDARMS, MEHTA was required to report the activity of XN Capital on his Form 1040, Schedule C.

f. For the tax years 2019, 2020, and 2021, FEDARMS issued a Form 1099-MISC (Miscellaneous/Non-Employee Compensation) to XN Capital for consulting/advisory services performed by MEHTA (XN Capital) for FEDARMS. MEHTA then used these Forms 1099 as the basis for the gross receipts he reported on his Form 1040, Schedule C for XN Capital.

g. MEHTA's federal tax returns do not report any of the gross receipts or net profit (loss) activity related to FEDARMS. As the sole owner of XN Capital, which is the sole owner of FEDARMS, MEHTA was and is ultimately responsible for reporting the income (loss) of the business operations related to FEDARMS on his Form 1040.

h. Based on MEHTA's filed federal income tax returns, MEHTA substantially underreported his income from the operations of XN Capital by failing to report the millions of dollars of business activity of FEDARMS. By failing to report income from FEDARMS, MEHTA's IRS Forms 1040 substantially understated his federal income taxes owed. The reporting of income from all sources includes all of the gross receipts from FEDARMS in the year received (cash basis of accounting) or earned (accrual method of accounting). None of the gross receipts of FEDARMS were reported on any of MEHTA's IRS Forms 1040 for 2018, 2019, 2020, and 2021.

i. From on or about March 25 to on or about April 18, 2022, MEHTA, a resident of Fort Smith, Arkansas, did willfully make and subscribe a U.S. Individual Income Tax Return, Form 1040, for the calendar year 2021, which was verified by written declarations that it was made

under the penalties of perjury and which he did not believe to be true and correct as to every material matter. Specifically, the income tax return, which was filed with the Internal Revenue Service, reported "Total Income" of a loss of ($1,375), whereas, as MEHTA then and there well knew, this information was materially false as it failed to include substantial income MEHTA received from FEDARMS in 2021 in excess of $1.5 million.

### Count 3 – False Declaration Before Court

j. On or about February 26, 2021, the U.S. Department of Labor brought a civil complaint in the United States District Court for the Western District of Arkansas in Civil Action No.: 2:21-cv-02045-PKH (hereinafter civil action) against FEDARMS and MEHTA, individually, for violating the provisions of Fair Labor Standards Act and to restrain FEDARMS / MEHTA from withholding payment of overtime compensation found by the Court to be due employees under the Act, and an equal amount as liquidated damages due to the employees.

k. The civil complaint in Civil Action No.: 2:21-cv-02045-PKH alleged in part, that MEHTA and FEDARMS were violating the Fair Labor Standards Act by employing employees for more than forty hours in a workweek without paying them time and a half for the excess hours and deducting 30 minutes a day for two 15-minute breaks from the employees' time cards."

l. It was a matter material to the civil action whether MEHTA was the owner of FEDARMS and therefore liable for the violations alleged in the civil complaint.

m. It was also a matter material to the civil action whether MEHTA and FEDARMS allowed employees a break of fifteen minutes or a break of twenty minutes or more as pursuant to Department of Labor regulations FEDARMS employees were entitled to be paid for 15-minute breaks but were not entitled to be paid for breaks of 20 minutes or more.

n. On December 14, 2021, a deposition under oath was taken of MEHTA in Fort Smith, Arkansas in the civil action. During the deposition MEHTA, while under oath, declared with respect to the aforesaid material matters, as follows:

Q. So is this one in Delaware [referring to XN Capital LLC] the parent company of Federal Armament?

A. No, because parent company insinuates ownership."

And later during the deposition MEHTA testified under oath, as follows:

Q. Was there -- what's the distinct amount of time employees were allotted for breaks?

A. Oh, on either shift what I would assume it would be?

Q. Yes.

A. I assumed it would be 20 plus minutes.

Q. And is this based off of your work that you did post investigation about the amount of time employees spent on breaks?

A. Yes.

Q. Or this based –

A. It's based on me pulling up the handbook copies.

Q. So your employee handbook says 20 minute breaks?

A. Currently it does.

Q. Okay. What did it say back in 2016, do you know?

A. No, actually let me -- let me think. The -- as far as I know it's always been 20. I think at 15 and the manager would say, hey, you know, because we have to -- it's -- it doesn't make for that transit time between the position. I remember if I recollect

correctly there was an unapproved copy that tried to say 15 but it was never permitted that way. It was always 20 plus.

o. The aforesaid declarations under oath by MEHTA, as he then and there well knew and believed, were false. As detailed above, XN Capital LLC was the owner of FEDARMS. Further, numerous individuals who were employees of FEDARMS were interviewed and stated that they were only allowed 15-minute breaks during the relevant time alleged in the civil complaint. These individuals also produced FEDARMS employee handbooks issued to employees during the relevant time alleged in the civil complaint which showed that FEDARMS employees were only allowed 15-minute breaks and not 20-minute or 20 plus minute breaks.

p. Based on the above outlined evidence and other investigation not summarized above, the United States can prove beyond a reasonable doubt that the defendant, NEIL RAVI MEHTA, committed the offenses of Possession of an Unregistered Firearm, in violation of 26 U.S.C. §§ 5841, 5861(d) and 5871, Fraud and False Statements in violation of 26 U.S.C. § 7206(1), and False Declaration Before a Court in violation of 18 U.S.C. § 1623 in the Western District of Arkansas.

## ADVICE OF RIGHTS

8. The Defendant hereby acknowledges that the Defendant has been advised of and fully understands the following constitutional and statutory rights:

   a. to have an attorney and if the Defendant cannot afford an attorney, to have one provided to the Defendant and paid for at the United States' expense;
   b. to persist in the Defendant's plea of not guilty;
   c. to have a speedy and public trial by jury;
   d. to be presumed innocent until proven guilty beyond a reasonable doubt;
   e. to confront and examine witnesses who testify against the Defendant;
   f. to call witnesses on the Defendant's behalf;
   g. to choose to testify or not testify and that no one could force the Defendant to testify; and,
   h. to have at least 30 days to prepare for trial.

## WAIVER OF RIGHTS

9. The Defendant hereby acknowledges that the Defendant understands with respect to each count to which the Defendant pleads guilty, the Defendant thereby WAIVES all of the rights listed as (b) through (h) of the above paragraph.

## WAIVER OF ACCESS TO RECORDS

10. The Defendant hereby waives all rights, whether asserted directly or by a representative, to request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including without limitation any records that may be sought under the Freedom of Information Act, 5 U.S.C. § 552, or the Privacy Act of 1974, 5 U.S.C. § 552a.

## WAIVER OF "HYDE" CLAIM

11. The Defendant hereby waives any claim under the Hyde Amendment, 18 U.S.C. § 3006A (Statutory Note), for attorney fees and other litigation expenses arising out of the investigation or prosecution of this matter.

## EFFECTS OF BREACH OF THIS AGREEMENT BY DEFENDANT

12. The Defendant agrees that if after signing this Plea Agreement the Defendant commits any crimes, violates any conditions of release, or fails to appear for sentencing, or if the Defendant provides information to the Probation Office or the Court that is intentionally misleading, intentionally incomplete, or intentionally untruthful, or if the Defendant violates any term of this Plea Agreement, takes a position at sentencing which is contrary to the terms of this Plea Agreement, or attempts to withdraw from this Plea Agreement, this shall constitute a breach of this Plea Agreement which shall release the United States from any and all restrictions or obligations placed upon it under the terms of this Agreement and the United States shall be free to

reinstate dismissed charges or pursue additional charges against the Defendant. The Defendant shall, however, remain bound by the terms of the Agreement, and will not be allowed to withdraw this plea of guilty unless permitted to do so by the Court.

13. The Defendant further agrees that a breach of any provisions of this Plea Agreement shall operate as a WAIVER of Defendant's rights under Rule 11(f) of the Federal Rules of Criminal Procedure and Rule 410 of the Federal Rules of Evidence, and the United States shall be allowed to use and to introduce into evidence any one or more of the following:

   a. admissions against interest, both oral and written, made by the Defendant to any person;
   b. statements made by the Defendant during the Defendant's change of plea hearing;
   c. the factual basis set forth in the Plea Agreement;
   d. any testimony given under oath in these proceedings or to a grand jury or a petit jury;
   e. any and all physical evidence of any kind which the Defendant has provided to the United States; and,
   f. any and all information provided by the Defendant to the United States' attorneys, or to federal, state, county, and/or local law enforcement officers.

14. The Defendant understands and agrees that the United States shall only be required to prove a breach of the Plea Agreement by a preponderance of the evidence. The Defendant further understands and agrees that the United States need only prove a violation of federal, state, or local criminal law by probable cause in order to establish a breach of this Plea Agreement.

**STIPULATION REGARDING SENTENCING GUIDELINES**

15. The United States and the Defendant agree and stipulate that based on the most readily provable conduct the following Sentencing Guideline provisions should apply as to the offense and relevant conduct as charged in Count 2:

a. The tax loss for which the Defendant should be held accountable is more than $550,000 but less than $1.5 million. Pursuant to U.S.S.G. §§ 2T1.1 (a)(1) and 2T4.1 this would

result in a base offense level of 20.

## MAXIMUM PENALTIES

16. The Defendant hereby acknowledges that the Defendant has been advised of the maximum penalties for each count to which the Defendant is pleading guilty. By entering a plea of guilty to the three count Information, the Defendant agrees that the Defendant faces:

**As to Count One:**

    a. a maximum term of imprisonment for 10 years;
    b. a maximum fine of $250,000
    c. both imprisonment and fine;
    d. a term of supervised release which begins after release from prison;
    e. a possibility of going back to prison if the Defendant violates the conditions of supervised release;
    f. a special assessment of $100.00.

**As to Count Two:**

    a. a maximum term of imprisonment for 3 years;
    b. a maximum fine of $250,000, or alternatively, not more than the greater of twice the gross gain or twice the gross loss caused by the offense;
    c. both imprisonment and fine;
    d. a term of supervised release which begins after release from prison;
    e. a possibility of going back to prison if the Defendant violates the conditions of supervised release;
    f. a special assessment of $100.00; and,
    g. restitution as ordered by the Court.

**As to Count Three:**

    a. a maximum term of imprisonment for 5 years;
    b. a maximum fine of $250,000
    c. both imprisonment and fine;
    d. a term of supervised release which begins after release from prison;
    e. a possibility of going back to prison if the Defendant violates the conditions of supervised release;
    f. a special assessment of $100.00.

## CONDITIONS OF SUPERVISED RELEASE

17.     The Defendant acknowledges that if a term of supervised release is imposed as part of the sentence, the Defendant will be subject to the standard conditions of supervised release as recommended by the United States Sentencing Commission and may be subject to other special conditions of supervised release as determined by the Court. The standard conditions of supervised release are as follows:

  a. The Defendant shall report to the probation office in the federal judicial district where the Defendant is authorized to reside within 72 hours of release from imprisonment, unless the probation officer instructs the Defendant to report to a different probation office or within a different time frame.
  b. After initially reporting to the probation office, the Defendant will receive instructions from the court or the probation officer about how and when to report to the probation officer, and the Defendant shall report to the probation officer as instructed.
  c. The Defendant shall not knowingly leave the federal judicial district where the Defendant is authorized to reside without first getting permission from the court or the probation officer.
  d. The Defendant shall answer truthfully the questions asked by the probation officer.
  e. The Defendant shall live at a place approved by the probation officer. If the Defendant plans to change where the Defendant lives or anything about the Defendant's living arrangements (such as the people the Defendant lives with), the Defendant shall notify the probation officer at least 10 days before the change. If notifying the probation officer at least 10 days in advance is not possible due to unanticipated circumstances, the Defendant shall notify the probation officer within 72 hours of becoming aware of a change or expected change.
  f. The Defendant shall allow the probation officer to visit the Defendant at any time at the Defendant's home or elsewhere, and the Defendant shall permit the probation officer to take any items prohibited by the conditions of the defendant's supervision that he or she observes in plain view.
  g. The defendant shall work full time (at least 30 hours per week) at a lawful type of employment, unless the probation officer excuses the Defendant from doing so. If the defendant does not have full-time employment the Defendant shall try to find full-time employment, unless the probation officer excuses the Defendant from doing so. If the Defendant plans to change where the Defendant works or anything about the Defendant's work (such as the position or the job responsibilities), the Defendant shall notify the probation officer at least 10 days before the change. If notifying the probation officer at least 10 days in advance is not possible due to unanticipated circumstances, the Defendant shall notify the probation officer within 72 hours of becoming aware of a change or expected change.
  h. The Defendant shall not communicate or interact with someone the Defendant

knows is engaged in criminal activity. If the Defendant knows someone has been convicted of a felony, the Defendant shall not knowingly communicate or interact with that person without first getting the permission of the probation officer.

i. If the Defendant is arrested or questioned by a law enforcement officer, the Defendant shall notify the probation officer within 72 hours.

j. The Defendant shall not own, possess, or have access to a firearm, ammunition, destructive device, or dangerous weapon (i.e., anything that was designed, or was modified for, the specific purpose of causing bodily injury or death to another person, such as nunchakus or Tasers).

k. The Defendant shall not act or make any agreement with a law enforcement agency to act as a confidential human source or informant without first getting the permission of the court.

l. If the probation officer determines that the Defendant poses a risk to another person (including an organization), the probation officer may require the Defendant to notify the person about the risk and the Defendant shall comply with that instruction. The probation officer may contact the person and confirm that the Defendant has notified the person about the risk.

m. The Defendant shall follow the instructions of the probation officer related to the conditions of supervision.

## RESTITUTION

18. <u>Restitution to the IRS.</u> Pursuant to 18 U.S.C. § 3663(a)(3), the defendant agrees to pay restitution to the Internal Revenue Service in the total amount to be determined prior to sentencing, including interest and penalties as later calculated and determined prior to sentencing.

a. The defendant agrees that the total amount of restitution reflected in this Agreement results from his fraudulent conduct, and he will not in any subsequent administrative or judicial civil proceeding deny his liability for the civil fraud penalty for the tax years, inclusive, under 26 U.S.C. § 6663.

b. The defendant agrees to pay Title 26 interest and statutory penalties as a part of the restitution amount; interest runs from the last date prescribed for payment of the relevant tax liability until the IRS receives payment in full.

c. The defendant further understands the restitution will be calculated during the preparation of the presentence investigation report, and finally determined by the Court at the

sentencing hearing. The defendant agrees to cooperate in the investigation of the amount of restitution. Further, the defendant agrees to cooperate in efforts to collect the restitution obligation, by any means the United States deems appropriate and agrees to waive any defense or objections to any action to enforce the collection of the restitution.

19. <u>Restitution to the State of Arkansas.</u> Pursuant to 18 U.S.C. § 3663(a)(3), the defendant agrees to pay restitution to the Arkansas Department of Finance and Administration ("DFA") for taxes due and owing in a total amount to be determined prior to sentencing. The defendant agrees this amount will include applicable state interest and penalties if such are calculated by the DFA prior to sentencing.

### AGREEMENT TO FILE COMPLETE AND CORRECT TAX RETURNS

20. The defendant agrees to file, prior to sentencing, complete and correct initial or amended federal and state income tax returns for the years in issue, and that he will not file thereafter any claims for a refund of taxes, penalties, or interest for amounts attributable to the returns filed incident to the plea. Regarding the Federal reporting obligation, the defendant may choose to provide the IRS with his written acceptance of the Substitutes For Returns prepared by the IRS in lieu of filing returns.

### AGREEMENT TO PROVIDE FINANCIAL INFORMATION

21. The Defendant agrees that no later than thirty (30) days after the change of plea, the Defendant shall complete the financial disclosure statement and the accompanying releases provided by the United States Attorney's Office and deliver them to the United States Probation Office and the United States Attorney's Office. This financial disclosure statement is sworn by the Defendant to be true and correct under penalty of perjury. The Defendant agrees that his failure to truthfully and fully complete the financial disclosure statement and accompanying releases may

result in the Government objecting to the Defendant receiving a reduction for acceptance of responsibility.

## PAYMENT OF MONETARY PENALTIES

22. The Defendant agrees that monetary penalties to include special assessments, fine, and/or restitution imposed by the Court will be: (i) subject to immediate enforcement as provided in 18 U.S.C. § 3613c; and (ii) submitted to the Treasury Offset Program so that any federal payment such as an income tax refund or transfer of returned property the Defendant receives may be offset and applied to federal debt without affecting the periodic payment schedule ordered by the Court.

## NO OTHER CHARGES

23. If the Court accepts this plea agreement, The United States agrees that no other federal charges, which stem from the activities described in the Information will be brought against the Defendant in the Western District of Arkansas.

## SENTENCING GUIDELINES ARE ADVISORY BUT NOT MANDATORY

24. The parties acknowledge that the Court shall consult and take into account the United States Sentencing Commission Guidelines in determining the sentence, but that the Court is not bound by the Guidelines and may sentence the Defendant to any sentence within the statutory range.

## AGREEMENT DOES NOT PROMISE A SPECIFIC SENTENCE

25. The Defendant acknowledges that discussions have taken place concerning the possible guideline range which might be applicable to this case. The Defendant agrees that any discussions merely attempt to guess at what appears to be the correct guideline range and do not bind the District Court. Further, the Defendant acknowledges that the actual range may be greater

than contemplated by the parties. In the event that the actual guideline range is greater than the parties expected, the Defendant agrees that this does not give the Defendant the right to withdraw the Defendant plea of guilty.

## RELEVANT CONDUCT CONSIDERED

26. At the sentencing hearing, the United States will be permitted to bring to the Court's attention, and the Court will be permitted to consider, all relevant information with respect to the Defendant's background, character, and conduct, including the conduct that is the subject of this investigation for which the Defendant has not been charged up to the date of this Agreement, and/or which is the basis for any of the counts which will be dismissed pursuant to this Agreement, as provided by § 1B1.3 of the Sentencing Guidelines.

## PERJURY

27. In the event that it is determined that the Defendant has not been truthful with the Court as to any statements made while under oath, this Agreement shall not be construed to protect the Defendant from prosecution for perjury or false statement.

## CONCESSIONS BY THE UNITED STATES

28. The United States agrees to recommend that the Defendant be sentenced to a term of imprisonment within the guideline range as determined by the Court.

29. The United States agrees not to object to a recommendation by the Probation Office or a ruling of the Court which awards the Defendant an appropriate-level decrease in the base offense level for acceptance of responsibility. If the offense level in the Presentence Report is 16 or greater and the Court accepts a recommendation in the Presentence Report that the Defendant receive two levels for acceptance of responsibility, the United States agrees to move for an additional one-level reduction for acceptance of responsibility for a total of three levels.

However, the United States will not be obligated to move for an additional one-level reduction or recommend any adjustment for acceptance of responsibility if the Defendant engages in conduct inconsistent with acceptance of responsibility including, but not limited to, the following: a) falsely denies, or makes a statement materially inconsistent with, the factual basis set forth in this Agreement; b) falsely denies additional relevant conduct in the offense; c) is untruthful with the United States, the Court, or probation officer; or d) materially breaches this Plea Agreement in any way.

## UNITED STATES' RESERVATION OF RIGHTS

30. Although the United States agrees not to object to certain findings by the Probation Office or to rulings of the Court, it reserves the right to:

   a. make all facts known to the Probation Office and to the Court;
   b. call witnesses and introduce evidence in support of the Presentence Report;
   c. contest and appeal any finding of fact or application of the Sentencing Guidelines;
   d. contest and appeal any departure from the appropriate guideline range; and,
   e. defend all rulings of the District Court on appeal including those rulings which may be contrary to recommendations made or positions taken by the United States in this Plea Agreement which are favorable to the Defendant.

## NO RIGHT TO WITHDRAW THE GUILTY PLEA

31. The United States' concessions on sentencing options are non-binding and made pursuant to Rule 11(c)(1)(B) of the Federal Rules of Criminal Procedure. As a result, if the Court should reject the Defendant's requests or recommendations for certain findings of fact or applications of the Guidelines, the Defendant acknowledges that there is no right to withdraw the guilty plea.

## AGREEMENT NOT BINDING ON THE COURT

32. The parties agree that nothing in this Agreement binds the Court to:

   a. make any specific finding of fact;

       b.      make any particular application of the Sentencing Guidelines;
       c.      hand down any specific sentence;
       d.      accept any stipulation of the parties as contained in this Plea Agreement; or
       e.      accept this Plea Agreement.

33. The United States and the Defendant acknowledge that the Court has an obligation to review the Presentence Report before it accepts or rejects this Plea Agreement.

## AGREEMENT DOES NOT BIND ANY OTHER ENTITY

34. The parties agree that this Plea Agreement does not bind any governmental entity other than the United States Attorney's Office for the Western District of Arkansas.

## SPECIAL ASSESSMENT

35. The Defendant agrees to pay $300.00 as the special assessment in this case.

## REPRESENTATIONS BY DEFENDANT

36. By signing this Plea Agreement, the Defendant acknowledges that:

    a.    The Defendant has read this Plea Agreement (or has had this Plea Agreement read to him/her) and has carefully reviewed every part of it with defense counsel.
    b.    The Defendant fully understands this Plea Agreement and is not under the influence of anything that could impede the Defendant's ability to fully understand this Plea Agreement.
    c.    No promises, agreements, understandings, or conditions have been made or entered into in connection with the decision to plead guilty except those set forth in this Plea Agreement.
    d.    The Defendant is satisfied with the legal services provided by defense counsel in connection with this Plea Agreement and matters related to it.
    e.    The Defendant has entered into this Plea Agreement freely, voluntarily, and without reservation, and the Defendant's desire to enter a plea of guilty is not the result of threats or coercion directed at the Defendant or anyone connected with the Defendant.

## REPRESENTATIONS BY DEFENSE COUNSEL

37. By signing this Plea Agreement, counsel for the Defendant acknowledges that:

    a.    Counsel has carefully reviewed every part of this Plea Agreement with the

    Defendant, and this Plea Agreement accurately and completely sets forth the entire agreement between the United States and the Defendant.
b.  Counsel has explained the ramifications of the Plea Agreement to the Defendant, and believes that the Defendant understands this Plea Agreement, what rights are being lost by pleading guilty, and what the United States has agreed to do in exchange for the plea of guilty.
c.  Counsel believes that the Defendant's decision to enter into this Plea Agreement is an informed and voluntary one.

## PLEA AGREEMENT CONSTITUTES THE ENTIRE AGREEMENT

38.  The Defendant and the Defendant's attorney both acknowledge that this Plea Agreement constitutes the entire agreement of the parties. Further, all parties agree that there are no oral agreements or promises which have been made to induce the Defendant to change his/her plea to guilty.

Dated this __17th__ day of __October__, 2023.

_____
NEIL RAVI MEIITA
Defendant

_____
W. H. TAYLOR
Attorney for Defendant

DAVID CLAY FOWLKES
UNITED STATES ATTORNEY

By: _____
KENNETH ELSER
Assistant U.S. Attorney